UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JEROME MURRAY                                                                    PLAINTIFF

VERSUS                                         CIVIL ACTION NO. 3:23-CV-3000-TSL-RPM

COMMISSIONER OF SOCIAL SECURITY                                      DEFENDANT

**REPORT AND RECOMMENDATIONS**

Before the Court is Plaintiff Jerome Murray's Complaint appealing from the Commissioner of Social Security's decision which issued a partially favorable decision as to his claim under the Social Security Act. Doc. [1]. On August 31, 2020, Murray filed an application for disability benefits, alleging disability beginning on March 1, 2018. Doc. [9] at 225–31, 263. He was 49 years old at the time of filing. He has an 8th-grade education and past relevant work experience as a skidder operator. *Id.* at 104, 267. He is right handed. *Id.* at 118, 120.

Murray's claim was denied initially and on reconsideration. *Id.* at 161, 167. He requested and was granted a hearing before an Administrative Law Judge ("ALJ"). On April 4, 2023, the ALJ issued a partially favorable decision. *Id.* at 31–47. The ALJ found Murray had not engaged in substantial gainful activity since the alleged onset date of March 1, 2018. *Id.* at 33. The ALJ further found Murray had severe impairments of osteoarthritis, diabetes mellitus with required toe amputations, small finger amputation, diabetic retinopathy with retinal detachment and cataracts, and obesity.[1] *Id.* at 33–34. The ALJ concluded that, since the alleged onset date of March 1, 2018, Murray's impairment or combination of impairments did not meet any of the listings found in the Social Security regulations. *Id.* at 34.

---

[1] The ALJ also considered whether Murray had severe impairments of hypertension and elevated lipids but found those impairments were not severe. Doc. [9] at 34.

The ALJ determined that, prior to August 1, 2022, Murray maintained the residual functional capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), except with the following limitations:

> [W]ith the dominant upper extremity, he could only push, pull, or lift ten pounds; he could occasionally handle, finger, or feel with the dominant upper extremity; he could only occasionally reach overhead with the dominant upper extremity; with the non-dominant upper extremity he could frequently but not constantly reach, handle, finger, or feel. Additionally he should not have been required to climb ladders, ropes or scaffolds and should have only occasionally balanced, stooped, knelt, crouched, crawled, or climbed ramps or stairs; he should have avoided frequent exposure to temperature extremes and hazards including moving machinery and unprotected heights; and he could not perform jobs requiring fine visual acuity.

*Id.* at 34–35. The ALJ further determined that, since August 1, 2022, Murray maintained the RFC to perform a range of sedentary work as defined in 20 C.F.R. 404.1567(a), except with certain limitations. *Id.* at 43. Relying on the vocational expert's ("VE") testimony, the ALJ found that, prior to August 1, 2022, there were jobs which existed in significant numbers in the national economy that Murray could have performed, i.e., usher, school bus monitor, and barker. *Id.* at 45–46. However, the ALJ further found that, beginning on August 1, 2022, there are no jobs which exist in significant numbers in the national economy that Murray can perform. *Id.* at 46. Therefore, the ALJ concluded Murray was not disabled prior to August 1, 2022, but became disabled on that date and has continued to be disabled as defined by the Social Security Act. *Id.* Additionally, the ALJ concluded Murray's disability is expected to last twelve months past the onset date. *Id.* The Appeals Council denied Murray's request for review. *Id.* at 6.

Murray then filed the instant Complaint in federal court. Doc. [1]. Murray argues the ALJ erred as follows: (1) in her analysis of the medical opinions; (2) in deciding the onset date of disability and in her consideration of an assistive device; and (3) in creating an RFC not supported by substantial evidence. Doc. [12] at 3.

## Law and Analysis

### Standard of Review

The court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision is supported by substantial evidence, then the findings are conclusive; and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues de novo, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language. *Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 423(d)(5). The Social Security Administration ("SSA") utilizes a five-

step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4), § 416.920(a)(4). Under this analysis, the ALJ may decide a claimant is disabled if he or she finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he or she is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he or she cannot perform this alternative employment. *Id.*

**Analysis of Medical Opinions**

Murray argues the ALJ erred in the analysis of Dr. William Geissler's opinion. Doc. [12] at 4. Dr. Geissler performed a right reverse shoulder arthroplasty on April 23, 2019.[2] Doc. [9-1] at 85. In August 2019, Dr. Geissler opined Murray's "permanent work restrictions will be no overhead lifting of 10 pounds" and "[l]imited pushing, pulling, [and] lifting to 10 pounds to protect the prosthesis." *Id.* at 74. The "prosthesis" refers to the implant placed in Murray's right shoulder. *Id.* at 85.

---

[2] Prior to this, Murray underwent two right rotator-cuff repairs in 2018, both performed by Dr. James Watson. Doc. [9] at 363. He attended physical therapy for approximately nine months. *Id.* at 362. In January 2019, Dr. Watson had concerns the cuff was reinjured, noting Murray's only surgical option would be a reverse shoulder arthroplasty if the cuff was retorn. *Id.* at 457. A subsequent MRI showed a massive tear of the cuff. Doc. [9] at 457; [9-1] at 102. Dr. Watson then referred Murray to Dr. Geissler for a second opinion. Doc. [9] at 453.

4

The ALJ found Dr. Geissler's opinion generally persuasive. *Id.* at 42. The ALJ explained as follows:

> The 2019 opinion of Dr. Geissler as to the claimant's limitations . . . is considered generally persuasive as to the claimant's limitations prior to the established onset date and the suggested restrictions, to the extent consistent with the evidence, have been considered in assessing the [RFC] for that period.

Doc. [9] at 42. Murray contends the ALJ's failure to mention the specifics of the permanent lifting restrictions in her analysis of Dr. Geissler's opinion caused prejudicial error to Murray. Doc. [12] at 5. He argues the ALJ's finding that Dr. Geissler's opinion was generally persuasive required more explanation as to the permanent lifting restriction of 10 pounds. *Id.*

Murray filed his application for disability benefits on August 31, 2020. Doc. [9] at 225–31, 263. For any application filed "on or after March 27, 2017," 20 C.F.R. § 404.1520c applies. Under these more recent Social Security regulations, an ALJ is required to "explain" his or her persuasiveness finding insofar as "consistency" and "supportability" are concerned. 20 C.F.R. § 404.1520c(b)(2). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s)." In other words, ALJs are no longer required to give controlling weight to the opinions of treating physicians. However, before an ALJ may discount or reject an opinion, he or she must "articulate in [the] determination or decision how persuasive [the ALJ] find[s] all of the medical opinions . . . in [the claimant's] case record." 20 C.F.R. § 404.1520c(b); *see Moore v. Saul*, No. 3:20-CV-48, 2021 WL 754833, at *3 (S.D. Miss. Feb. 26, 2021). In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

5

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. 404.1520c(b)(2). "In order to provide an 'adequate discussion' or 'adequate explanation' about the persuasiveness of a given medical opinion, the ALJ must . . . provide sufficient analysis to allow the Court to *meaningfully review* whether his finding was supported by substantial evidence; the Court cannot be left to merely speculate about the reasons animating that finding." *Miller v. Comm'r of Soc. Sec.*, No. 1:20-CV-194, 2021 WL 7541415, at *7 (S.D. Miss. Dec. 17, 2021). "Ultimately, the ALJ must set forth a 'logic bridge' that links the medical evidence to his persuasiveness finding such that this Court can undertake a meaningful judicial review of whether that finding is supported by substantial evidence." *Id.* (quoting *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021); *see Price v. Austrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ . . . must build an accurate and logical bridge between the evidence and final determination.").

The ALJ's decision as a whole is thorough. Yet the ALJ devotes just one sentence to her explanation as to why she found Dr. Geissler's opinion to be generally persuasive.[3] Doc. [9] at 42. "[T]he ALJ is not always required to do an exhaustive point-by-point discussion." *Aulder v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "The relevant question is not whether the ALJ presented an arbitrary level of detail, it is whether the decision contains sufficient articulation to identify the evidentiary choices made by the finder of fact." *Jenkins v. Comm'r of Soc. Sec.*, No. 3:23-CV-305, 2024 WL 1158373, at *5 (N.D. Miss. Mar. 18, 2024). Here, the Court concludes that the ALJ's explanation as to Dr. Geissler's opinion is insufficient for failing to provide an adequate

---

[3] The Court may consider the ALJ's decision as a whole. *See Venegas v. O'Malley*, No. EP-24-CV-1, 2024 WL 5182647, at *9 n.21 (W.D. Tex. Dec. 13, 2024) (considering the ALJ's decision as a whole). The ALJ discussed Dr. Geissler's records elsewhere in her decision. Doc. [9] at 37–38. Subsequently, the ALJ says, "prior to the established onset date, [Murray] remained capable of lifting twenty pounds at a time; frequently lifting or carrying of objects weighing up to ten pounds[.]" *Id.* at 41.

6

discussion as to persuasiveness. The ALJ fails to discuss supportability and consistency, only mentioning in passing that she considered Dr. Geissler's opinion "to the extent [it was] consistent with the evidence." Doc. [9] at 42.

Murray still must show the ALJ's failure to explain her consideration of Dr. Geissler's opinion prejudiced him. *Morris v. Kijakazi*, No. 4:21-CV-1243, 2022 WL 10177703, at *5 (N.D. Tex. Sept. 29, 2022). So, "the Court turns to the question of whether the ALJ's error was harmless." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 501 (S.D. Miss. 2021). "'Procedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'" *Aulder*, 501 F.3d at 448 (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1998)). "[H]armless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Morris*, 2022 WL 10177703, at *5 (citing *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015)).

The Commissioner argues the ALJ found Dr. Geissler's opinion regarding Murray's right upper extremity limitations generally persuasive and accounted for and incorporated appropriate limitations in the RFC. Doc. [13] at 8. The Court agrees. Despite the lack of adequate discussion, the ALJ clearly accounted for and incorporated Dr. Geissler's opinion in the RFC. The ALJ found that, prior to August 1, 2022, Murray maintained the RFC to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), except, *inter alia*, Murray could only push, pull, or lift 10 pounds with the dominant upper extremity. Doc. [9] at 34–35. But Murray argues this was prejudicial error in light of the VE identifying only light-work jobs. Doc. [12] at 5.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). So, a "maximum lifting restriction of 10 pounds is at odds with [an] RFC for light work." *Phillips v. U.S. Comm'r Soc. Sec. Admin.*,

7

No. 08-CV-182, 2009 WL 304043, at *2 (W.D. La. Feb. 6, 2009). During examination of the VE, the ALJ asked the following hypothetical question:

> I want you to consider this individual capable of light work but with the dominant upper extremity he can only push or pull 10 pounds or lift 10 pounds.
>
> . . .
>
> Also with that dominant upper extremity he can only occasionally handle, finger or feel, although with the non[-]dominant upper extremity he can frequently but not constantly reach, handle, finger or feel. Now, additionally he cannot be required to climb ladders, ropes or scaffolds, should only occasionally balance, stoop, kneel, crouch, crawl or climb ramps and stairs, should avoid frequent exposure to temperature extremes and hazards including moving machinery and unprotected heights, can perform only occasional overhead reaching with the dominant upper extremity and additionally cannot perform jobs requiring fine visual acuity. Now would there be any jobs existing in the economy such an individual could perform?

Doc. [9] at 119–20. The VE identified the jobs of usher, school bus monitor, and barker. *Id.* at 121. However, counsel for Murray then asked the VE:

> If this individual could have no overhead reaching with his right upper extremity and the person can lift and carry 10 pounds occasionally and less than 10 pounds occasionally -- this person should avoid even moderate exposure to hazards like the moving machinery and unprotected heights. Would those jobs still be available?

*Id.* at 122. The VE responded, "Possibly not. They are light jobs, 20 pounds lifting." *Id.* The VE explained as follows:

> I think there is a possibility it could involve more lifting, even though the barker may appear trying to get people to come into business. Sometimes [a barker has] to hold or wear some information about the product. [The barker] might be asked to set up a display, something like that. The usher with their normal duties probably would not have to lift more than that but there is always the possibility there could be other duties where they want [the usher] to help them with something regarding the event. I would basically say these are light jobs that would be described as lifting more than sedentary range.

*Id.* At first glance, the VE's testimony appears to create ambiguity as to whether Murray could perform the identified jobs. However, counsel for Murray's hypothetical asks a question different than the ALJ's hypothetical. Murray's hypothetical also is not commensurate with Dr. Geissler's

8

opinion. Counsel for Murray's hypothetical applies a 10-pound lifting restriction generally; whereas the ALJ's hypothetical and Dr. Geissler's opinion applies the 10-pound lifting restriction to the dominant (right) upper extremity. Counsel for Murray's hypothetical also applies no overhead reaching to the dominant (right) upper extremity, which was different from the ALJ's hypothetical as noted in the transcript.[4] *Id.* at 122–23.

Therefore, while Murray was limited to lifting only 10 pounds with his dominant (right) upper extremity, he was capable of performing the light-work jobs identified by the VE because he was capable of lifting up to 20 pounds with his non-dominant (left) upper extremity. This is not inconsistent with Dr. Geissler's opinion. "The fact that one arm may be further impaired does not preclude the ability to perform light work." *Clanton v. Comm'r of Soc. Sec.*, No. 1:14-CV-1039, 2016 WL 74421, at *11 (W.D. Mich. Jan. 6, 2016). "[T]he implicit premise of Plaintiff's argument—that a claimant with a lifting restriction on one arm cannot sufficiently compensate with the other arm to perform light work—is faulty. Indeed, claimants with such restrictions on a single arm have been found capable of light work." *Brammer v. Astrue*, No. 11-404, 2013 WL 85065, at *6 (E.D. Ky. Jan. 7, 2013). The RFC restricts Murray to lifting only 10 pounds with his dominant (right) upper extremity. This is supported by, and consistent with, Dr. Geissler's opinion restricting Murray to lifting no more than 10 pounds to protect the prosthesis placed in his right shoulder. Furthermore, Murray affirmed that Dr. Geissler's 10-pound lifting restriction applied only to his right shoulder. Doc. [9] at 113–14. As a final matter, the ALJ's hypothetical is consistent with the RFC. *See Staten v. Comm'r of Soc. Sec. Admin.*, No. 1:12-CV-128, 2014 WL 2616879, at *4 (S.D. Miss. June 12, 2014) (holding that the hypothetical question posed to the VE must incorporate limitations consistent with those in the RFC).

---

[4] The Court notes here that Dr. Geissler did not assign Murray with a permanent work restriction of no overhead *reaching* but a permanent work restriction of "no overhead *lifting* of 10 pounds." Doc. [9-1] at 74 (emphasis added).

In sum, the ALJ's explanation as to Dr. Geissler's opinion is insufficient; the ALJ failed to provide an adequate discussion as to persuasiveness. Nevertheless, the Court concludes the error was harmless and did not prejudice Murray as the ALJ accounted for and incorporated Dr. Geissler's opinion in the RFC.

**Onset Date of Disability and Consideration of an Assistive Device**

Murray further argues the ALJ erred in deciding the onset date of disability and in her consideration of an assistive device. Doc. [12] at 8. Murray alleged an onset date of March 1, 2018. Doc. [9] at 263. However, the ALJ found Murray was disabled beginning on August 1, 2022. Doc. [9] at 43. The ALJ concluded "the evidence supports a finding that on or after that date, the claimant was limited to a range of sedentary work giv[en] the combined impact of all impairments, including subsequent toe amputations with recommended use of an assistive device." *Id.* at 44. Murray argues the onset date is arbitrary. Doc. [12] at 9.

The Court first addresses the ALJ's consideration of an assistive device. In February 2021, Dr. Christopher Rawls reported Murray was not using an assistive device. Doc. [9-1] at 294. Dr. Rawls opined Murray had mild limitations with walking due to right knee pain and did not need an assistive device. *Id.* at 296. In May 2021, use of a cane was recommended. *Id.* at 333, 337, 427. In light of this recommendation, Murray argues the need for a cane prior to the established onset date is not discussed in the ALJ's decision. Doc. [12] at 9. However, the record shows that Murray did not use an assistive device until 2022 at the earliest. Murray testified he received and began using assistive devices such as a cane and a walker in 2022. Doc. [9] at 107–08. And medical records show the use of a cane and a walker was recommended in October 2022 following Murray's right great toe amputation. Doc. [9-5] at 31, 43. The ALJ adequately considered Murray's need for an assistive device. No further consideration was necessary because there is

10

substantial evidence supporting the fact that Murray did not use an assistive device until 2022. The Court finds no reversible error here.

As for the onset date, "it is essential that the onset date be correctly established and supported by the evidence." *Spellman v. Shalala*, 1 F.3d 357, 361 (5th Cir. 1993) (citing SSR 83-20, 1983 WL 31249, at *1 (1983)). "Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." *Id.* (quoting SSR 83-20, 1983 WL 31249, at *2). "[T]he medical evidence is the primary element in the determination of onset of disability." *Id.* (quoting *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)). But with slowly progressive impairments, "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." *Id.* (quoting SSR 83-20, 1983 WL 31249, at *2). As such, the Fifth Circuit has held:

> [I]n cases involving slowly progressive impairments, when the medical evidence regarding the onset date of disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor.

*Id.* (footnote omitted). While Murray argues the onset date is arbitrary, he does not cite to the authority above or argue the ALJ erred in deciding the onset date without the assistance of a medical advisor. Arguably, Murray waived this issue. *See Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). Nevertheless, the Court addresses the issue out of abundance of caution.

In deciding the onset date, the ALJ considered "the combined impact of all impairments," including Murray's diabetes mellitus with required toe amputations (and resulting need of an assistive device); and osteoarthritis and pain in his right knee. Doc. [9] at 43–44. Diabetes mellitus has been recognized by courts as a slowly progressive impairment. *See Berry v. Astrue*, No. 3:11-CV-2817, 2013 WL 524331, at *15 (N.D. Tex. Jan. 25, 2013); *Baumgartner v. Astrue*, No. 3:09-

C-2357, 2011 WL 1159400, at *3–4 (N.D. Tex. Mar. 28, 2011). Additionally, osteoarthritis has been recognized by courts as a slowly progressive impairment. *See Dogan v. Astrue*, No. 2:11-CV-246, 2012 WL 4017794, at *15 (N.D. Ind. Sept. 11, 2012); *Pena v. Barnhart*, No. 01-491, 2002 WL 35650033, at *2 (D.N.M. Apr. 29, 2002).

The Court summarizes the ALJ's discussion of the medical evidence showing Murray's impairments worsened beginning in August 2022. Around the time of the onset date, Murray complained of both back pain and right knee pain. As early as February 2021, Murray was diagnosed with osteoarthritis in his right knee. Doc. [9-1] at 296. As recited by the ALJ, however, Murray reported in September 2022 his right knee pain had worsened over the past month. Doc. [9-4] at 21. He also reported that his right knee buckled on him when walking and that he could only walk short distances. *Id.* Treatment notes indicated Murray had decreased strength and range of motion; moderate osteophyte formation in all three joint compartments; moderate to prominent degenerative joint space narrowing in the medial and lateral compartments; degeneration of the joint and meniscus; decreased stance time and antalgic gait; decreased heel strike; and decreased step/stride length resulting in slow cadence. *Id.* Murray was referred to physical therapy for his osteoarthritis and pain in his right knee. *Id.*

During this time, Murray also had abnormal glucose values, i.e., between 220–50, due to his diabetes mellitus. Doc. [9-4] at 29. As a result of his diabetes, Murray was admitted to the hospital shortly after the onset date resulting in amputation of two toes. Murray's right great toe was amputated in October 2022 due to gangrenous ulceration and necrosis. Doc [9-5] at 22, 79–82. Operative findings stated "[n]ecrotic right great toe with abscess; small pressure ulcers on the medial and lateral portions of the other right toes where toes [are] compressing against each other."

*Id.* at 51. Use of cane and a walker was recommended following this amputation.[5] *Id.* at 31, 43. In November 2022, Murray presented with worsening right foot pain and a diabetic ulcer, resulting in amputation of his second right toe. Doc. [9-2] at 527, 536, 542.

This medical evidence is not ambiguous and demonstrates Murray's impairments significantly worsened on or after the onset date.[6] Thus, it was not necessary for the ALJ to consult a medical advisor to determine the onset date. In accordance with Social Security Ruling 83-20 and the Fifth Circuit's holding in *Spellman*, the ALJ's determination of the onset date was based on a "legitimate medical basis" and was therefore "an informed judgment of the facts."

Moreover, the evidence discussed above is "more than a mere scintilla" and is adequate to support the ALJ's conclusion. *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co.*, 305 U.S. at 229). Accordingly, the Court concludes the ALJ's decision is supported by substantial evidence. *See Clark v. Berryhill*, No. 3:16-CV-369, 2017 WL 3648522, at *3 (S.D. Miss. Aug. 23, 2017) (holding the record supports the finding that the ALJ's determination as to the onset date of disability was supported by substantial evidence). The ALJ did not err in deciding the onset date of disability nor in her consideration of an assistive device.

**Residual Functional Capacity**

Lastly, Murray argues the ALJ erred in creating an RFC not supported by substantial evidence. Doc. [12] at 11. Due to hospitalization, surgeries, procedures, therapy, and the complexity of Murray's medical conditions, he contends the ALJ failed to factor into the RFC the time periods where Murray could not work during the relevant time period, i.e., between the alleged onset date of March 1, 2018, and the established onset date of August 1, 2022. *Id.* at 11–12. He argues

---

[5] In contrast, use of a cane was recommended as early as May 2021. Doc. [9-1] at 333, 337, 427. Yet Murray testified he did not begin using assistive devices until 2022. Doc. [9] at 107–08
[6] There is also other evidence in the record which supports the onset date. For example, Murray testified he stopped driving around the onset date of disability due to problems with his vision. Doc. [9] at 110.

13

further consideration of his time absent from work and his ability to work due to the complexity of his medical procedures warrants reversal and remand. *Id.* at 14. The Commissioner argues the record does not establish that either impairment-related limitations or absences would have precluded Murray from work during the relevant time period. Doc. [13] at 11.

This issue is presented as one challenging whether substantial evidence supports the RFC. In the Court's view, however, the relevant issue is whether the ALJ erred in failing to make a finding as to Murray's ability to maintain or sustain employment in light of absenteeism. The Fifth Circuit has explained as follows:

> Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson*, where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

*Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (discussing *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002)). A specific finding regarding a claimant's ability to maintain or sustain work is required where, "by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* Thus, "[i]t is the exceptional case where a medical impairment and its symptoms require a separate analysis of the ability to sustain employment." *Tutor v. Kijakazi*, No. 3:22-CV-60, 2022 WL 11902194, at *1 (N.D. Miss. Oct. 20, 2022) (citing *Frank*, 326 F.3d at 619). The Court ultimately concludes this is not the exceptional case requiring a separate analysis of the ability to maintain or sustain employment.

The Court in *Zenteno v. Comm'r of Soc. Sec. Admin.*, No. 4:23-CV-89, 2023 WL 6300582, at *3–8 (N.D. Tex. Sept. 27, 2023), addressed a similar issue to the one here and summarized the claimant's history of relevant hospital visits and durations. The Court stated that "a record of hospitalizations that exceed an absenteeism limit is sufficient evidence to reverse and remand an

14

ALJ's decision when the ALJ has not addressed the claimant's ability to sustain employment." *Id.* at *7 (citing *Johnson v. Colvin*, No. 3:14-CV-4213, 2016 WL 791291, at *1 (N.D. Tex. Feb. 8, 2016)). However, "a lack of evidence that a claimant's hospitalizations were frequent enough or lasted long enough to raise concerns about absenteeism is insufficient to reverse and remand an ALJ's decision." *Id.* (citing *Boykin v. Kijakazi*, No. 4:21-CV-507, 2023 WL 2572208, at *7 (E.D. Tex. Mar. 20, 2023)).

Here, Murray was not hospitalized frequently enough to raise concerns or establish absenteeism-related limitations; it appears from the record Murray only had two extended hospitalizations during the relevant time period. He was hospitalized in November 2020 for 11 days due to chronic infection of his right little finger with necrosis and osteomyelitis. Doc. [9-1] at 193. He was also hospitalized in October 2021 for 8 days due to infection in his left hand. *Id.* at 470–71, 544, 648. This does not demonstrate Murray's physical ailment waxed and waned in its manifestation of disabling symptoms. Furthermore, Murray does not point to any medical opinion which would support the requirement of a separate finding as to Murray's ability to maintain or sustain employment due to absenteeism. To the contrary, agency physician Dr. Madena Gibson recommended "several limitations to exertional, postural and environmental activities in order for [claimant] to be able to sustain work" but made no recommendation regarding absenteeism-related limitations. Doc. [9] at 143. And agency physician Dr. Andrew Scanameo opined that Murray demonstrated "the maximum sustained work capability" to do light work and did not discuss absenteeism-related limitations. *Id.* at 154.

In any event, the record demonstrates the ALJ considered and accounted for absenteeism when making the RFC determination. In her analysis, the ALJ found that Murray, "prior to the established onset date, was capable of sustaining work within the determined [RFC] for two-hours

blocks in an eight-hour workday, five days per week (or an equivalent work schedule), *without the need for additional work breaks, excessive absences, or other accommodations.*" *Id.* at 41 (emphasis added). The "RFC is a measure of the claimant's capacity to perform work 'on a regular and continuing basis.'" *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Thus, "an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *Id.* Murray's ability to maintain or sustain employment was subsumed in the ALJ's analysis and required no separate finding. *See Frank*, 326 F.3d at 619. The ALJ adequately considered Murray's ability maintain or sustain employment and accounted for absenteeism. The Court finds no error.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that the decision of the Commissioner be affirmed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

    SO ORDERED AND ADJUDGED, this the 7th day of February 2025.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE